# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JOSEPH R. DILLON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action 2:20-cv-3689
Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Social Security Income ("SSI"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 17), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability determination and **REMAND** this matter to the Commissioner and the ALJ pursuant to Sentence Four of § 405(g).

    **I.**    **BACKGROUND**

Plaintiff filed an application for SSI on August 18, 2017, alleging that he became disabled on May 14, 2014. (R. at 366.) Plaintiff's application was denied initially in July of 2017, and upon reconsideration in September 2017. (R. at 257, 258–272, 273, 274–92). A hearing was held on July 23, 2019, before an Administrative Law Judge ("ALJ"), who issued an

unfavorable determination on August 1, 2019. (R. at 234–256, 8–28.) The Appeals Council declined to review that unfavorable determination, and thus, it became final. (R. at 1–7.)

Plaintiff seeks judicial review of the Commissioner's final determination. He alleges that the ALJ committed reversible error when he assessed Plaintiff's residual functional capacity[1] ("RFC"). Specifically, Plaintiff contends that the ALJ erred by failing to adequately explain why he did not incorporate into Plaintiff's RFC all the restrictions that state agency reviewers had found despite concluding that the reviewers' findings were "persuasive." (ECF No.15, at PageID 817–821.) In particular, Plaintiff asserts that the ALJ failed to adequately explain why the RFC did not include the findings that Plaintiff was limited to work where a supervisor or coworker would be present to explain tasks, give directions, and occasionally redirect. The undersigned agrees.

## II.  THE ALJ's DECISION

The ALJ issued his decision on August 1, 2019, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 8–28.) At step one of the sequential

---

[1] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 4040.1545(a)(1).

evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since July 6, 2017, his application date. (R. at 13.) At step two, the ALJ found that Plaintiff had the following severe impairments: asthma; minimal degenerative disc disease of the lumbar spine; obesity; left long and ring finger trigger finger status-post release; right long finger trigger finger and carpal tunnel syndrome; bipolar disorder; anxiety disorder; and substance abuse disorder. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14.) At step four, the ALJ determined Plaintiff's RFC, in pertinent part,[3] as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] The ALJ also included a number of physical limitations in Plaintiff's RFC. Because Plaintiff's challenge only concerns the ALJ's findings with regard to his mental health limitations, the undersigned limits her discussion to the same.

3

> From a mental standpoint, the claimant can perform simple routine, and repetitive tasks, involving only simple work-related decisions and with few, if any, workplace changes. He can work in positions that do not require strict production quotas or fast-paced work, such as on an assembly line. He can have occasional interaction with the general public, coworkers, and supervisors with no tandem tasks and no customer service, persuasion, or conflict resolution responsibilities.

(R. at 16.) The ALJ determined that Plaintiff had no past relevant work experience. (R. at 22.) The ALJ then relied on testimony from a vocational expert ("VE") to determine that in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (R. at 22.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 23.)

### III.  RELEVANT RECORD EVIDENCE

**A.  Plaintiff's Testimony About His Mental Health**

At the July 2019 hearing, Plaintiff testified about his mental health. Plaintiff stated that after he quit abusing crack cocaine, his anxiety went through the roof to the point where he had to be medicated. (R. at 243.) He also testified that there were times when he could not even leave his house and that he had problems being around other people. (*Id*.) Plaintiff indicated that he experienced paranoia which caused him to "bolt." (*Id*. at 243–44.) At the time of the hearing, Plaintiff was receiving twice monthly counseling and taking Vistaril, which helped somewhat. (R. at 244.) Plaintiff stated that he had difficulty keeping focus on things. (R. at 244–45.) Plaintiff explained that he would get up to do something but then forget what he had planned to do after taking five steps from where he had been sitting. (R. at 249.) He further explained that he would start things but walk away before finishing because he became distracted by something else. (*Id*.) Plaintiff testified that he had been kicked out of several schools before completing school through the tenth grade. (R. at 249–50.) He had been enrolled in special education classes. (*Id*.)

**B.    Treatment Records Related to Plaintiff's Mental Health**

The records reflect that Plaintiff took medications for mental health issues while incarcerated during 2016 and 2017. A November 14, 2016 physical examination form indicated that Plaintiff's history was positive for "Mental/Psych;" his mental attitude was abnormal; and that he was referred for a mental health consultation. (R. at 473–74.) "Anxiety" was written in the additional requests and comments. (R. at 474.) On November 19, 2016, Plaintiff reported that his anxiety medication was not working and that he was agitated. (R. at 472.) A July 10, 2017 physical examination form indicated that Plaintiff had a history of "Nerves/Anxiety" and "Mental/Psych." (R. at 451.) He was again referred for a mental health consultation. (*Id.*) While incarcerated, Plaintiff took amitriptyline and vistaril. (R. at 453, 457, 459, 467, 468, 472.)

On August 8, 2017, Plaintiff sought substance abuse therapy from Muskingum Valley Health Center ("Muskingum Valley"). (R. at 580–81.) He reported that he had been released from jail about three weeks prior and that he had used cocaine the weekend after he was released. (*Id.*) On August 9, 2017, Plaintiff's affect appeared euthymic, his speech was coherent, and he had no delusions or hallucinations. (R. at 578.)

On August 10, 2017, Plaintiff sought to establish primary care at Muskingum Valley. (R. at 485.) He reported that he was on a waiting list to be admitted into a drug rehabilitation program and that he had just seen a psychiatrist who refilled his prescription for amitriptyline. (*Id.*) Plaintiff's scores on a depression screen indicated that he suffered from only minimal depression. (*Id.*) Upon examination, he was oriented to person, place, and time, and he had normal mood, affect, behavior, judgment, and thought content. (R. at 486.)

At a September 6, 2017 substance abuse therapy appointment at Muskingum Valley, Plaintiff reported that his medications were working well. (R. at 573.) His affect appeared

euthymic, his speech was coherent, and he had no delusions or hallucinations. (R. at 572.) That same day, Plaintiff was admitted to Cedar Ridge Behavioral Health Solutions ("Cedar Ridge") for inpatient treatment for substance abuse issues. (R. at 498, 505.) Plaintiff indicated that he had a history of anxiety, depression, and bi-polar issues and that he suffered from the following symptoms: anxiety, depression, fidgeting, impulsivity, irritability, mind racing, and restlessness. (R. at 499, 505.) He further indicated that he was taking amitriptyline, hydroxyzine, and Tegretol and that he experienced some relief with exercise and music. (*Id*.) Plaintiff was diagnosed with cannabis and other stimulant dependence and bipolar disorder. (R. at 503.) His affect, mood, behavior, orientation, appearance, nutritional habits, attention, vigilance, concentration, and speech were all normal. (R. at 511.) Plaintiff's attitude was cooperative, and his motor activity was relaxed. (*Id*.) In addition, Plaintiff's rate of thought, reasoning, and knowledge fund were normal; his language was appropriate; and his long- and short-term memory, judgment, and insight were all intact. (*Id*.) The records reflect that Plaintiff actively participated in therapy sessions while he received treatment at Cedar Ridge. (R. at 513–26.) It appears that he did not, however, remain in inpatient treatment at Cedar Ridge. (R. at 570.)

At substance abuse therapy appointments at Muskingum Valley on November 16, 2017, and February 14, 2018, Plaintiff appeared anxious and agitated. (R. at 566, 560.) At a December 13, 2017 appointment, however, he appeared cheerful. (R. at 563.) At all three visits, his speech was coherent, and he had no delusions or hallucinations. (R. at 566, 563, 560.)

At a December 8, 2017 primary care visit, Plaintiff reported that he had been "clean" from cocaine use for six months. (R. at 548.) He also reported that physicians at Cedar Ridge were prescribing him propranolol for anxiety. (*Id*.) Upon examination, he was oriented to

person, place, and time, and he had normal mood, affect, behavior, judgment, and thought content. (R. at 549.)

At a March 15, 2018 consultative examination for his physical impairments, Plaintiff had a pleasant affect and an appropriate mood. (R. at 593.) He did not avoid eye contact, and he was alert and oriented to person, place, and time. (*Id*.) Plaintiff's thought processes and mentation also appeared normal. (*Id*.)

On April 10, and May 10, 2018, Plaintiff reported that he did not want to stop smoking marijuana because it helped with his anxiety but that he had been cocaine free for ten months. (R. at 605, 603.)

At a July 5, 2018 appointment with Cedar Ridge, Plaintiff indicated that his depression had been increasing for the last three-to-four weeks; that he had mild racing thoughts; mood swings at times; and fair sleeping. (R. at 632.) His affect appeared euthymic, his speech was coherent, and he had no delusions or hallucinations. (*Id*.) At an August 23, 2018 appointment, Plaintiff again indicated that he did not want to stop smoking marijuana because it helped with his anxiety even though he was advised that marijuana was a depressant. (R. at 636.)

At primary care visits on September 12, 2018, December 19, 2018, February 7, 2019, and February 20, 2019, Plaintiff's scores on a depression screen indicates that he was not suffering from depression. (R. at 611, 680, 683–84, 686.) He was oriented to person, place, and time, and he had normal mood, affect, behavior, judgment, and thought content. (R. at 611, 680–81, 684, 687.)

At an October 22, 2018 appointment for orthopedic treatment, Plaintiff was alert and oriented to person, place, and time; he had normal mood and affect; and he was pleasant and interactive. (R. at 619.) A mental status examination on November 13, 2018, revealed that

7

Plaintiff's affect, mood, behavior, orientation, appearance, nutritional habits, attention, vigilance, concentration, and speech were all normal. (R. at 641–42.) Plaintiff's attitude was cooperative, and his motor activity was relaxed. (*Id*.) In addition, Plaintiff's rate of thought, reasoning, and knowledge fund were normal; his language was appropriate; and his long- and short-term memory, judgment, and insight were intact. (*Id*.)

On January 8, 2019, Plaintiff denied depression but reported increased anxiety and that he had experienced two panic attacks, which were previously a rare occurrence for him. (R. at 711.) Plaintiff indicated that he had been off his medications for the past week. (*Id*.) On that date, and on March 26, 2019, Plaintiff had normal hygiene and no psychomotor abnormalities. (R. at 711, 729.) Plaintiff also had a pleasant demeanor, good eye contact, normal speech, linear and coherent thought processes, and future-oriented thought content. (*Id*.) Plaintiff's judgment and insight were fair and intact. (*Id*.) At the January visit, Plaintiff's mood was anxious, and he appeared tense. (R. at 711.) At the March visit, however, he was only mildly anxious, and he appeared to be more at ease. (R. at 729.)

**C.     Medical Opinions and Administrative Findings**

On October 27, 2017, state agency consultative reviewer, Cynthia Waggoner, PsyD., reviewed Plaintiff's file at the initial level and found that Plaintiff was able to carry out simple tasks in situations where a supervisor or coworker was present to explain tasks, give directions, and occasionally redirect. (R. at 268.) Dr. Waggoner further found that Plaintiff could understand, remember, and sustain tasks that could be learned after a short demonstration. (R. at 269.) Dr. Waggoner found that Plaintiff could interact occasionally in situations that did not require resolution of conflicts or persuading others to follow commands. (*Id*.) Last. Dr. Waggoner found that Plaintiff would perform best in a static work environment without strict

production quotas. (R. at 270.) On February 21, 2018, state agency consultative reviewer Robyn Murry-Hoffman, PhD., reviewed Plaintiff's file at the reconsideration level and affirmed adopted Dr. Waggoner's findings. (R. at 288–90.)

On December 10, 2018, Plaintiff's counselor, a social worker, completed an assessment form. (R. at 656–57.) In it, she indicated that Plaintiff was seriously limited with regard to the following abilities and aptitudes: maintaining attention for two hours; work in coordination or proximity to others without being unduly disruptive; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticisms from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; dealing with normal work stress; understanding and remembering detailed instructions; carrying out detailed instructions; dealing with the stress of semiskilled and skilled work; interacting with the general public; and maintaining socially appropriate behavior. (*Id*.) She additionally indicated that Plaintiff would be absent, on average, about two days a month as a result of his impairments or treatments. (*Id*.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take 'into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

As previously explained, Plaintiff alleges that the ALJ erred by failing to adequately explain why he did not incorporate into Plaintiff's RFC all the restrictions that the state agency consultative reviewers found despite concluding that their findings were "persuasive." (ECF No.15, at PageID 818–21.) Plaintiff's contention of error is well taken.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on

10

all the relevant evidence in a his or her case file. *Id*. The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[5] 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or

---

[4] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

[5] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§§ 404.1513(a)(2), (5); 416.913(a)(2), (5).

she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

In this case, the ALJ analyzed the opinions from the state agency consultative reviewers, Drs. Waggoner and Murray-Hoffman, at the same time and concluded that they were persuasive. The ALJ wrote:

> I find the state agency medical consultants' physical assessments and psychological consultants' mental assessments persuasive. The limitations noted by the consultants have been considered and incorporated into the residual functional capacity . . . . As to mental assessments, I have incorporated the noted limitations *but without adopting* the specific language used, e.g., understand, remember, and sustain simple tasks learned by short demonstration, *or specific limitations, e.g., the need for occasional redirection by supervisor or coworker present*. I find that the limitations set forth in the residual functional capacity adequately accommodate and address the claimant's symptoms. The limitations address the claimant's social impairment due to anxiety and bipolar disorder. The limitations in pace and adjustment, such as limitations related to judgment and decision-making no strict production quotas and simple routine tasks, likewise accommodate the claimant's impairments evidenced by anxious mood and reported racing thoughts (Exhibits 2A, 4A).

(R. at 21–22.) (emphasis added)

Plaintiff asserts, and the undersigned agrees, that this discussion is inadequate. The ALJ explicitly indicated that the limitations found by the reviewers were "persuasive" and that he

12

incorporated almost all of them into Plaintiff's RFC. The ALJ further indicated that he did not, however, adopt a limitation to work performed where a supervisor or coworker was present to explain tasks, give directions, and occasionally redirect. (*Id.*) Plaintiff correctly contends that the ALJ failed to explain why he declined to adopt that limitation. Indeed, the ALJ did not explain why the limitations that were adopted were consistent with and supported by the evidence as required by §§ 404.1520c(b)(2); 416.920c(b)(2). Nor did he explain how the omitted limitation lacked consistency or supportability.

To be sure, the ALJ was not required to adopt verbatim the reviewers' findings even though he determined that they were persuasive. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). But where, as is the case here, an ALJ determines that an opinion or finding is persuasive, the ALJ must incorporate the limitations in that opinion or finding or provide an adequate explanation for declining to do so. *See, e.g.*, *Queen v. Comm'r of Soc. Sec.*, No. 2:16–cv–1082, 2017 WL 6523296, at *9–10 (S.D. Ohio Dec. 21, 2017) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission). An ALJ's failure to provide such an explanation requires remand because it prevents this Court from conducting meaningful review to determine whether substantial evidence supports the ALJ's decision. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" (quoting 5 U.S.C. § 557(c)(3)(A))); *Allen v. Astrue*, No. 5:11–cv–95,

2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10–295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision"); *Cote v. Colvin*, No. 16–cv–57, 2017 WL 448617, at *7 (W.D. Wisc. Feb. 2, 2017) ("On remand, the ALJ must build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment."). Such is the case here.

The Commissioner contends that the omission of this limitation—work where a supervisor or coworker is present to explain tasks, give directions, and occasionally redirect—is harmless because work ordinarily involves the presence of such actors who perform such tasks. (ECF No. 17, at PageID 830–31.) In making this assertion, the Commissioner analogizes this instance to the one in *Rudd v. Commissioner of Social Security*, No.12–6136, 531 F. App'x 719, 731 (6th Cir. 2013), an unpublished opinion from the Sixth Circuit Court of Appeals finding that an ALJ did not commit reversible error by failing to include a limitation for "normal and meal breaks every two hours" in a hypothetical question to a VE even though that limitation had been included in the plaintiff's RFC. The Court in that case reasoned that breaks every two hours were normal and assumed in most jobs, and therefore, the omission of that limitation from the hypothetical was harmless. *Id*. at 731.

The undersigned is not, however, convinced that the presence of supervisors and coworkers to explain tasks, give directions, and occasionally redirect is as ubiquitous as breaks.

Indeed, the limitation at issue in *Rudd* was for "*normal* and meal breaks." *Id*. The limitation at issue in this case is not for the "normal" presence of supervisors and coworkers. In addition, the undersigned cannot conclude that the degree to which supervisors and coworkers are present to provide oversight is uniform. Indeed, cases in this district have considered an ALJ's omission of "over the shoulder supervision" restrictions from RFCs. *See e.g., Collins v. Comm'r of Soc. Sec.*, No. 2:17-cv-1028, 2019 WL 1512539, at *5 (S.D. Ohio Apr. 8, 2019) *report and recommendation adopted*, 2019 WL 1858823 (S.D. Ohio Apr. 25, 2019) (finding that ALJ erred by failing to explain why an "over-the-shoulder limitation" opined by state agency psychologists was omitted from RFC assessment even though their opinions were given great weight). Although those cases typically pertain to persons who are limited to work that involves remote supervision, at the very least they suggest that the provision of oversight by supervisors and coworkers exists on a continuum ranging from remote to proximal.

Moreover, *Rudd* involved an ALJ's omission of a limitation in a hypothetical to a VE after the ALJ included that limitation in the plaintiff's RFC. This case, by contrast, involves an ALJ's failure to explain why a limitation was omitted from Plaintiff's RFC. It is possible that the ALJ omitted the limitation at issue from Plaintiff's RFC because he reasoned that the presence of supervisors and coworkers to provide oversight was ubiquitous and that inclusion of such a limitation was therefore unnecessary or redundant. But the lack of an explanation so stating forces the undersigned to speculate about the ALJ's reasoning. Accordingly, the undersigned finds that Plaintiff's allegation of error has merit.

## VI. RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability determination and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this R&R.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

>/s/ *Chelsey M. Vascura*
>CHELSEY M. VASCURA
>UNITED STATES MAGISTRATE JUDGE